United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| MARIELA ELIZABETH ROBLETO,<br>Plaintiff,<br>v.<br>NANCY A. BERRYHILL,<br>Defendant. | Case No. 17-cv-07146-RMI<br><br>**ORDER ON MOTIONS FOR SUMMARY JUDGMENT**<br>Re: Dkt. Nos. 28, 32 |

Plaintiff Mariela Elizabeth Robleto seeks judicial review of an Administrative Law Judge ("ALJ") decision denying her application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416, 423, and 1382. Following remand, an ALJ issued an unfavorable decision on August 18, 2017. *See Administrative Record* ("AR") (dkt. 15) at 1106-1131. The ALJ's decision was the final administrative action in this matter, and is therefore the "final decision" of the Commissioner of Social Security, which this court may review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Both parties have consented to the jurisdiction of a magistrate judge (dkts. 11, 20) and both parties have moved for summary judgment (dkts. 28, 32). For the reasons stated below, the court will grant Plaintiff's motion for summary judgment, and will deny Defendant's motion for summary judgment.

**LEGAL STANDARDS**

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A district court has a limited scope of review and can only set aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Substantial

1 evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence
2 as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108
3 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported
4 by substantial evidence," a district court must review the administrative record as a whole,
5 considering "both the evidence that supports and the evidence that detracts from the
6 Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The
7 Commissioner's conclusion is upheld where evidence is susceptible to more than one rational
8 interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

**PROCEDURAL HISTORY**

On June 22, 2012, Plaintiff applied for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416, 423, 1382, alleging disability beginning on June 1, 2012. *AR* (dkt. 15) at 100, 231-49. The Acting Commissioner of Social Security denied Plaintiff's application initially, upon reconsideration, and after an ALJ hearing on August 23, 2013. *Id*. at 8-59, 114-20. Upon denial of review by the Appeals Council, Plaintiff requested review from the United States District Court for the Northern District of California; and, in a decision dated July 20, 2016, the Honorable James Donato found that the ALJ's decision contained two legal errors. *See Robleto v. Commissioner*, 3:15-cv-01019 JD, 2016 WL 3916319, at *1-*2 (N.D. Cal., July 20, 2016). First, "the ALJ did not explain with sufficient detail or evidence why she decided to give 'no weight' to the medical opinions stated in a mental impairment questionnaire prepared in August 2013 by Robleto's treating physician, Dr. Gilda Major, M.D., a psychiatrist, and her therapist, Diana Gomez, MSW." *Id*. at *1. Judge Donato found the ALJ's rejection of the medical opinions, solely because she found them to be "internally inconsistent" with Plaintiff's Global Assessment of Functioning score, was error. *Id*. Second, Judge Donato found that the ALJ committed error in her reliance on the opinion of independent psychiatric expert Ashok Khushalani, M.D., who did not treat or examine Plaintiff. *Id*. at *2. The court held, "[t]he ALJ inexplicably gave 'great weight' to Dr. Khushalani's opinion even though he had failed to read significant and highly material portions of the claimant's medical records prior to the hearing, was initially excused from the hearing by the ALJ for lack of

2

1  preparation, and then called back in to testify after spending what appears to be no more than

2  several minutes purportedly reviewing and digesting approximately 80 pages of medical records."

3  *Id*. The court remanded the case for further proceedings.

Thereafter, a different ALJ held a new hearing on June 5, 2017, at which Plaintiff was represented by an attorney, and Plaintiff testified on her own behalf. *AR* (dkt. 15) at 523-41. A vocational expert also testified. *Id*. at 523-41. In an August 18, 2017 decision, the ALJ found that Plaintiff was not disabled because she could perform a significant number of jobs that existed in the national economy. *Id*. at 1114-24. Plaintiff now seeks judicial review of the ALJ's June 2017 decision pursuant to 42 U.S.C. § 405(g).

**THE FIVE STEP SEQUENTIAL ANALYSIS FOR DETERMINING DISABILITY**

A person filing a claim for social security disability benefits ("the claimant") must show that she has the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or is expected to last for twelve or more months. *See* 20 C.F.R. §§ 416.920(a)(4)(ii), 416.909. The ALJ must consider all evidence in the claimant's case record to determine disability (*see id*. § 416.920(a)(3)), and must use a five step sequential evaluation process to determine whether the claimant is disabled (*see id*. § 416.920). "[T]he ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). Here, the ALJ evaluated Plaintiff's application for benefits under the required five-step evaluation process. *AR* (dkt. 15) at 1112-24.

At Step One, the claimant bears the burden of showing she has not been engaged in "substantial gainful activity" since the alleged date she became disabled. *See* 20 C.F.R. § 416.920(b). If the claimant has worked and the work is found to be substantial gainful activity, the claimant will be found not disabled. *See id*. The ALJ found that Plaintiff had not engaged in substantial gainful activity since June 1, 2012, her alleged onset date. *AR* (dkt. 15) at 1114. At Step Two, the claimant bears the burden of showing that she has a medically severe impairment or combination of impairments. *See* 20 C.F.R. § 416.920(a)(4)(ii), (c). "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no

3

more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting S.S.R. No. 96–3(p) (1996)). The ALJ found that Plaintiff suffered from the following severe impairments: bipolar disorder and borderline intellectual functioning ("BIF"). *AR* (dkt. 15) at 1115.

At Step Three, the ALJ compares the claimant's impairments to the impairments listed in appendix 1 to subpart P of part 404. *See* 20 C.F.R. § 416.920(a)(4)(iii), (d). The claimant bears the burden of showing her impairments meet or equal an impairment in the listing. *Id*. If the claimant is successful, a disability is presumed and benefits are awarded. *Id.* If the claimant is unsuccessful, the ALJ proceeds to Step Four. *See id*. § 416.920(a)(4)(iv), (e). Here, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. *AR* (dkt. 15) at 1115.

At Step Four, the ALJ must determine the claimant's residual functional capacity ("RFC") and then determine whether the claimant has the RFC to perform the requirements of her past relevant work. *See id*. §§ 416.920(e) and 416.945. The ALJ found Plaintiff had the RFC to perform a full range of work at all exertional levels but with the following non-exertional limitations: simple routine work that involves no contact with the public and no more than occasional contact with supervisors and coworkers. *AR* (dkt. 15) at 1118.

At Step Five, the ALJ must determine whether the claimant is able to do any other work considering her RFC, age, education, and work experience. *See* 20 CFR § 416.920(g). If the claimant is able to do other work, she is not disabled. The ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including laundry worker, hand packager, and photocopy machine operator. *AR* (dkt. 15) at 1123. Thus, the ALJ found Plaintiff had not been disabled from June 1, 2012, through the date of the decision. *Id*. at 1123-24.

**HEALTH CARE PROVIDERS**

On June 3, 2010, Plaintiff was seen by Jose Trejo, a licensed clinical social worker at Kaiser Permanente. *Id*. at 379. Plaintiff was seen by Pratima Bakshi, M.D., at Kaiser Permanente on June 7, 2012, for depression and stress. *Id*. at 368-69. On June 20, 2012, Plaintiff was evaluated

by Cide Jimenez-Sheppard, Ph.D., a clinical psychologist. *Id*. at 374-76. Plaintiff underwent a psychological consultative examination by Ahmed El-Sokkary, Psy.D., on August 27, 2012. *Id*. at 405. Rose Lewis, M.D., performed an internal medicine consultative examination of Plaintiff on August 29, 2012. *Id*. at 409. She was admitted to Mill-Peninsula, Sutter Health Medical Center for four days beginning January 11, 2013, due to increased mood swings, depression, and anxiety. *Id*. at 428. Plaintiff was referred to San Mateo County Behavioral Health and came under the care of Gilda Major, M.D. *Id*. Plaintiff was under the care of psychiatrist Gilda Major, M.D., and therapist Diana Gomez, from 2013 through 2017. Plaintiff was again admitted to Mill-Peninsula, Sutter Health Medical Center on January 15, 2017, due to a severe episode of recurrent major depressive disorder, without psychotic features, and generalized anxiety disorder. *Id*. at 793-807. Plaintiff was held on an involuntary hold, pursuant to California Welfare and Institutions Code Section 5150, for four days as a danger to herself. *Id*.

## DISCUSSION

## Evaluation of Medical Opinion Evidence

Ida Hilliard, M.D.

Plaintiff contends that the ALJ erred in relying on the opinion of the state agency consultant Ida Hilliard, M.D., who performed a review of the file and issued an opinion on September 13, 2012. *Pl.'s Mot.* (dkt. 28) at 18-19. The ALJ afforded "substantial weight" to Dr. Hilliard's opinion, stating that the limitations Dr. Hillard found of moderate deficits in social functioning and in concentration, persistence or pace "are supported by the treatment record and the claimant's subjective reports of anger and problems getting along with others but also her stabilization with medication compliance and group therapy." *AR* (dkt. 15) 1120-21. Dr. Hilliard's opinion was the only medical opinion to which the ALJ gave substantial weight. All other medical opinions were given less weight.

In response, Defendant asserts that "Plaintiff's contention that Dr. Hilliard did not review the medical records after September 2012 does not undermine the doctor's opinion because the doctor reviewed the medical evidence pertinent to the relevant period, and the ALJ found that the opinion was consistent with the treatment record and Plaintiff's subjective reports as a whole."

*Def.'s Mot.* (dkt. 32) at 10. This response begs the question of what exactly was the relevant time period. In her application for benefits, Plaintiff alleged disability beginning on June 1, 2012. In her opinion dated August 18, 2017, the ALJ found that Plaintiff "has not been under a disability from June 1, 2012, through the date of this decision." *AR* (dkt. 15) at 1123.

Judge Donato remanded this case to the Social Security Administration "for further proceedings to determine Plaintiff's eligibility for benefits in a manner consistent with this opinion." *See Robleto*, 2016 WL 3916319, at *2. The previous remand order did not limit the time period to what was covered by the original ALJ's decision. The court finds, therefore, that the ALJ did not violate Judge Donato's order by issuing a decision that covered the time period from June 1, 2012, to August 18, 2017. *See Stacy v. Colvin*, 825 F.3d 563 (9th Cir. 2016) (holding that the rule of mandate applies to the social security context and explaining that on remand, a lower court commits jurisdictional error if it takes actions that contradict the mandate, but that it may decide anything not foreclosed by the mandate). Consequently, the time period at issue is June 1, 2012, through August 18, 2017.

The court finds that the ALJ erred in affording substantial weight to the 2012 opinion of non-examining physician Dr. Hillard in light of the fact that Dr. Hillard had no opportunity to review the substantial body of medical evidence in this case dating from 2012 to 2017, a time period expressly covered by the ALJ's decision. This is particularly true in light of the fact that the ALJ discussed this later evidence in regard to the 2013 and 2017 opinions of Dr. Major and Ms. Gomez.

Ahmed El-Sokkary, Psy.D.

The ALJ held as follows regarding psychological consultative examiner Ahmed El-Sokkary, Psy.D.:

> Dr. El-Sokkary opined that the claimant was capable of performing simple tasks, but would have some difficulty maintaining concentration, persistence and pace in a competitive work setting. This opinion is given only some weight, as the record suggests that she would have problems interacting with co-workers and supervisors and even more limitations with the public.

*AR* (dkt. 15) at 1121.

6

Plaintiff attempts to parse this holding in an unconvincing way, arguing that the second sentence refers only to Plaintiff's capability of performing simple tasks, and that the ALJ did not address Dr. El-Sokkary's opinion as to Plaintiff's ability to maintain concentration, persistence, and pace in a competitive work place. The court finds this to be an unreasonable interpretation of the ALJ's holding. The court finds that the phrase "this opinion" at the beginning of the second sentence refers to the opinion summarized in the first sentence. Further, the court finds that to the extent the ALJ rejected Dr. El-Sokkary's opinion, he did so in favor of Plaintiff, finding more limitations than did the doctor. The court finds no error.

Ashok Khushalani, M.D.

In his July 20, 2016 decision, District Judge Donato found that the ALJ committed error in relying on the opinion of independent psychiatric expert Ashok Khushalani, M.D., who did not treat or examine Plaintiff. Judge Donato held:

> The ALJ inexplicably gave 'great weight' to Dr. Khushalani's opinion even though he had failed to read significant and highly material portions of the claimant's medical records prior to the hearing, was initially excused from the hearing by the ALJ for lack of preparation, and then called back in to testify after spending what appears to be no more than several minutes purportedly reviewing and digesting approximately 80 pages of medical records. The ALJ relied heavily on Dr. Khushalani's opinion that Robleto's condition had been stabilized by medication to a degree that she could successfully perform work consisting of "simple repetitive tasks with occasional public interaction." That reliance is not justified by the hasty and superficial record assessment performed by Dr. Khushalani, and the ALJ erred in crediting his opinions over those of the treating professionals.
> These errors are not harmless. The ALJ's determination that appropriate jobs for Robleto existed in the national economy depended on the improper rejection of Dr. Major's assessments of Robleto's "frequent deficiencies in concentration, persistence, and pace." The ALJ acknowledged that if Robleto had even a "20% deficit in maintaining concentration, persistence and pace, she "would not be able to perform any jobs" at all. Her finding that Robleto would not manifest this deficiency was based entirely on her embrace of Dr. Khushalani's slapdash conclusions.

*Robleto*, 2016 WL 3916319, at *2 (internal citations omitted).

The court remanded the case to the agency for further proceedings. *See AR* (dkt. 15) at 573-93. On remand, the ALJ found as follows regarding Dr. Khushalani:

> Independent psychiatric expert, Ashok Khushalani, M.D., testified at

7

> the prior hearing that the claimant's medical record documents a history of bipolar disorder II, anxiety, and BIF. The doctor testified that the severity of the claimant's mental conditions considered singly and in combination do not meet or medically equal any listing. Dr. Khushalani opined that the claimant would be capable of performing simple repetitive tasks with occasional public interaction. This opinion is given only some weight as the medical record substantiates that the claimant has more limitation related to the public as based on documented reports of anger and outbursts directed to others. I also find that the claimant's social interaction with supervisors and co-workers is limited to occasional for the same reasoning.

*AR* (dkt. 15) at 1121.

Despite the clear language in Judge Donato's order of July 20, 2016, the ALJ provided no new justification for giving weight to the opinion of Dr. Khushalani. Judge Donato found this opinion to be based on a "hasty and superficial record assessment" and described Dr. Khushalani's conclusions as "slapdash." *Robleto*, 2016 WL 3916319, at *2. However, on remand, the ALJ gave "some weight" to the opinion without addressing these issues. The court finds that the ALJ's reliance on Dr. Khushalani's opinion is not supported by substantial evidence and that the ALJ erred in giving weight to the opinion of this non-examining expert who did not have an adequate opportunity to review the record while rejecting the opinions of treating sources Dr. Major and therapist Diana Gomez. *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (weight to be given to a non-examining medical expert's testimony is determined by the degree to which he provides supporting explanation for his opinions).

Gilda Major, M.D., and Diana Gomez, MSW

The ALJ summarized the 2017 diagnosis and opinion by Dr. Major and therapist Diana Gomez as follows:

> In May 2017, treating source Dr. Major and therapist Diana Gomez co-authored a diagnoses and opinion finding the claimant as [sic] a mood disorder, NOS; mental retardation/BIF; and R/O impulse control disorder. Dr. Major opined that the claimant has a poor ability to make simple work-related decisions, complete a normal workweek without interruptions from psychologically based symptoms, and respond to changes in a routine work setting. The claimant has a fair ability to accept instructions from co-workers or peers without unduly distracting them, remember work-like procedures, maintain attention for two hour segments, sustain ordinary work routine without special supervision, perform at a consistent pace without an unreasonable number and length of rest [sic], ask simple questions with appropriate response [sic], be aware of normal hazards, interact appropriately

8

> with the general public, maintain socially appropriate behavior, travel to unfamiliar places and use public transportation. The claimant would likely miss more than three workdays per month.

*AR* (dkt. 15) at 1121.

The ALJ then provided the following analysis:

> I afford this opinion no weight as to the claimant's limited ability to interact with the public, co-workers and supervisors as the record documents a history of irritability, anger issues and problems getting along with co-workers. However, there is no objective evidence to show that [sic] the degree of limitations in the claimant's concentration, likelihood of missing three workday [sic] and her overall inability to persist during a normal workday. Even when she appeared withdrawn and internally preoccupied, the claimant was able to recall three of three words immediately and after a delay. The claimant repeated four digits forward and three in reverse and she had no problem spelling the word "world" in reverse and knew that seven quarters equaled $1.25 [sic]. The claimant's thought process was goal directed (Exhibit 6F/3). In October 2014, the claimant told Dr. Major that she was keeping calm, sleeping well, going out with her mother and eating healthy. Dr. Major reported that her mood was stable, no anhedonia, stable sleep and no confrontations (Exhibit 24F/26/). In December 2014, Dr. Major noted that the claimant was helping at home, getting along with her mother, no confrontations with her mother and when the claimant started to argue she was able to set limits by taking a break and leaving the room (Exhibit 24F/22). In February 2015, she accompanied her mother to medical appointments and provided IHSS support to her (Exhibit 24F/10). In February 2016, her group therapy progress note documents her continued work on her interpersonal skills and socialization. She was cooperative in group therapy and invited others to attend an upcoming Karaoke with True Hope (Exhibit 25F/2). I make the same finding as to the prior opinion dated August 2013 also provided by Dr. Major and Ms. Gomez (Exhibit 15F).
> In sum, there are limitations, such as those I have found, but the claimant was still able to work despite them.

*AR* (dkt. 15) at 1121-22.

Plaintiff first contends that the ALJ erred in giving no weight to the 2017 opinion of Dr. Major and therapist Gomez "as to the claimant's limited ability to interact with the public, co-workers and supervisors." *Pl.'s Mot.* (dkt. 28) at 21-26. This contention is based on a misinterpretation of the language in the ALJ's decision. The ALJ stated in her decision that she gave this portion of the 2017 opinion no weight because "the record documents a history of irritability, anger issues and problems getting along with co-workers and family." *AR* (dkt. 15) at 1121. While this is not clearly stated, it is apparent from the context that the ALJ rejected the opinion of the medical professionals on this issue in a manner favorable to Plaintiff, finding that she had limitations greater than those found by Dr. Major and therapist Gomez.

9

Second, Plaintiff contends correctly that the ALJ did not assign a weight value to the portions of the co-authored opinion addressing "the degree of limitations in the claimant's concentration, likelihood of missing three workday [sic] and her overall inability to persist during a normal workday." *Pl.'s Mot.* (dkt. 28) at 21. While it is unfortunate that the ALJ failed to provide this information, it is clear that the ALJ rejected the degree of limitation in Plaintiff's concentration, likelihood of missing three workdays per month, and overall inability to persist during a normal workday found by Dr. Major and therapist Gomez in their 2017 opinion, and apparently in their 2013 opinion as well.[1]

Third, Plaintiff contends that the ALJ did not offer specific or legitimate reasons for rejecting the degree of limitations in these three areas of Plaintiff's concentration, likelihood of missing three workdays, and her overall inability to persist during a normal workday addressed by the 2017 opinion. *Id.* at 22-23. The court agrees. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (where there is a conflict between the opinions of a treating physician and an examining physician, the ALJ may disregard the opinion of the treating physician only if she sets forth specific and legitimate reasons supported by substantial evidence in the record for doing so). In citing to the record, the ALJ relied on isolated entries which support her conclusion. However, the record as a whole demonstrates that Plaintiff's depression, anxiety, anger, irritation, and outbursts waxed and waned. The ALJ cited entries where Plaintiff is doing fairly well, but overlooked the repeated cycles of depression, the emotional lability and crying, the anger and outbursts that lead to police intervention, and a report with Adult Protective Services followed by a psychiatric hospitalization. Following a better period in 2016, Plaintiff decompensated and was required to be hospitalized again for stabilization. Thus, the ALJ erred by focusing only on the portions of the joint opinions that support her opinion. *See Gallant v. Heckler*, 753 F.2d 1450, 1455-56 (9th Cir. 1984) (the ALJ must consider both supporting and detracting evidence and cannot reach a conclusion first and justify it by ignoring competent evidence to the contrary). The

---

[1] The ALJ's statement that she made "the same finding as to the prior opinion dated August 2013" is puzzling. Most of the evidence discussed by the ALJ prior to this statement was from after 2013.

treating physician's statements must be read in context of the overall diagnostic picture she draws. *Garrison*, 759 F.3d at 998.

Objective medical evidence includes psychological abnormalities that can be observed, apart from the patient's symptoms or statements. The provisions found at 20 CFR § 404.1502(f) define objective medical evidence as "signs, laboratory findings, or both." More specifically, § 404.1502(g) provides:

> Signs means one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from your statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception, and must also be shown by observable facts that can be medically described and evaluated.

Dr. Major and therapist Gomez clearly documented the psychological abnormalities which support their diagnoses and statement. They stated that Plaintiff may present well on mental status exams but her global history indicates greater impairments in concentration, in social interaction, and in control of her moods. *AR* (dkt. 15) at 919. They indicated Plaintiff has rigid thinking, with unrealistic expectations of others, at times fixating on such which leads to psychiatric decompensation. Plaintiff had a low frustration tolerance which manifests in harmful behavior including hitting herself, cutting off her hair, throwing away her things, yelling, and screaming. *Id*. at 919. She has obsessive thinking with some repetitive behaviors. *Id*. at 919. Thus, Dr. Major and therapist Gomez clearly documented the psychological abnormalities which support their diagnoses and statement.

Finally, the court is unable to discern the intended import of the ALJ's final statement that despite the limitations found by the ALJ, Plaintiff "was still able to work." The record in this case indicates that Plaintiff worked part-time at Safeway for nine years. Her employment ended in Plaintiff's resignation in 2012, when Safeway wanted Plaintiff to change her work schedule and transfer her to another location. This employment ended before Plaintiff applied for benefits and long before the 2017 medical opinion. Plaintiff subsequently worked part time through the Department of Vocational Rehabilitation, two days per week for three and a half hours, for three

11

months. *Id*. at 526, 528. She was let go because she could not keep pace with the assembly line. *Id*. at 526-27. Finally, Plaintiff worked at home as a caregiver for her mother. This is hardly a work history which indicates that Plaintiff "was still able to work" to a degree that precluded a finding of disability.

The ALJ may find substantial evidence by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating her interpretation thereof, and making findings. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *see also Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *accord Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988). While the ALJ is not bound to accept all of a physician's opinions, the ALJ must provide a rationale for rejecting the opinions. In this case, the ALJ provided a review of the medical information, but did not provide a summary of conflicting facts or clinical evidence.

In summary, the court finds that the ALJ did not comply with the requirement, described in *Tonapetyan*, of setting forth specific and legitimate reasons supported by substantial evidence in the record for rejecting that portion of Dr. Major's 2017 opinion which addressed the degree of limitation in Plaintiff's concentration, her likelihood of missing three workdays per month, and her overall inability to persist during a normal workday, as well as the 2013 opinion. The ALJ focused only on the evidence which supported her decision, and erred by ignoring the substantial, objective evidence supporting Dr. Major's opinions. The ALJ's rejection of most of the 2017 opinion and all of the 2013 opinion was therefore not supported by substantial evidence.

### **Plaintiff's Credibility**

Plaintiff contends that the ALJ erred in assessing her credibility and symptom testimony. The ALJ found that "the weight of the objective evidence does not support the claimant's claims of disabling limitations to the degree she alleges." *AR* (dkt. 15) at 1119. The ALJ further found Plaintiff's allegations of BIF and depression "not fully consistent." *Id*. at 1120.

In assessing the credibility of a claimant's testimony regarding the intensity of subjective symptoms, the ALJ engages in a two-step analysis. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citing *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying

12

impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Vasquez*, 572 F.3d at 591. As set forth above in the discussion of the opinions of treating physician Dr. Major and Ms. Gomez, Plaintiff has produced objective medical evidence documenting her mental impairments. "If the claimant meets the first part of the analysis and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives 'specific, clear and convincing reasons' for the rejection." *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). Because the court has found that the ALJ erred in rejecting the opinions of Dr. Major and Ms. Gomez, the court further finds that the reasons put forward by the ALJ are neither clear nor convincing. Accordingly, the court concludes that the ALJ erred in assessing Plaintiff's credibility.

### **Ms. Costello's Testimony**

Although Plaintiff's mother, Elvira Costello, testified at the June 5, 2017 hearing, the ALJ did not mention, much less evaluate, that testimony in her decision. Plaintiff contends that the ALJ therefore committed harmful error. Ms. Costello testified at the hearing that Plaintiff becomes very angry. *AR* (dkt. 15) at 536. She further testified that she had to look after Plaintiff because of Plaintiff's eating habits, and that she sometimes reminds Plaintiff to take her medications. *Id*. at 536-37. Ms. Costello stated that Plaintiff was hospitalized recently because of "a very strong desperation." *Id*. at 537. She testified that Plaintiff took a knife and was twisting it towards herself. *Id*. at 537-38. A visitor in the home responded to Plaintiff's behavior by calling 911. *Id*. at 538. Ms. Costello further testified that Plaintiff had exhibited similar behavior two months earlier, becoming desperate, shouting and throwing things about. *Id*. at 538. Plaintiff was hospitalized on that occasion. *Id*.

The ALJ must consider statements of lay witnesses in determining the severity of a claimant's symptoms. *Stout v. Commissioner*, 454 F.3d 1050, 1053 (9th Cir. 2006) ("In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to do work."). As a general rule, "lay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence, and therefore cannot be disregarded without comment." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th

13

Cir. 1996) (internal citation omitted).

Defendant contends that the ALJ did not discount Ms. Costello's account because the ALJ referred to statements by her in the ALJ's decision. Specifically, the ALJ stated, "[t]herapy and medication management records document a history, mostly reported by the claimant's mother, of aggressiveness, irritability, rigid and concrete thinking and difficulty engaging with others." *AR* (dkt. 15) at 1119. The ALJ also referenced Ms. Costello's "assertion that the claimant has a history of developmental delay." *Id*. The court rejects Defendant's argument that these references to medical records amount to consideration of Ms. Costello's testimony at the 2017 hearing. Ms. Costello testified about Plaintiff behaving violently on two occasions, resulting in psychiatric hospitalizations. This goes beyond the reports of Ms. Costello noted by the ALJ. Ms. Costello's hearing testimony speaks to Plaintiff's ability to work in a safe and reliable manner, affecting not only herself but others as well. *See Nguyen*, 100 F.3d at 1467. The ALJ erred by ignoring this evidence. An error is harmless only if it is "inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115. This error was not harmless.

## **Nature of Remand**

Having found that various portions of the ALJ's decision were either erroneous or not supported by substantial evidence, the court must now decide if remand for further proceedings is appropriate. It is well established that "[i]f additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded [for further proceedings]." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981). It is equally well established that courts are empowered to affirm, modify, or reverse a decision by the Commissioner, "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see also Garrison*, 759 F.3d at 1019. Generally, remand with instructions to award benefits has been considered when it is clear from the record that a claimant is entitled to benefits. *Id*.

The credit-as-true doctrine was announced in *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1401 (9th Cir. 1988), where it was held that when "there are no outstanding issues that must be resolved before a proper disability determination can be made, and where it is clear from the administrative record that the ALJ would be required to award benefits if the claimant's

14

excess pain testimony were credited, we will not remand solely to allow the ALJ to make specific findings regarding that testimony . . . [instead] we will . . . take that testimony to be established as true." The doctrine promotes fairness and efficiency, given that remand for further proceedings can unduly delay income for those unable to work and yet entitled to benefits. *Id*. at 1398.

The credit-as-true rule has been held to also apply to medical opinion evidence, in addition to claimant testimony. *Hammock v. Bowen*, 879 F.2d 498, 503 (9th Cir. 1989). The standard for applying the rule to either is embodied in a three-part test, "each part of which must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020.

It should also be noted that "the required analysis centers on what the record evidence shows about the existence or non-existence of a disability." *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011). Thus, even though all conditions of the credit-as-true rule might be satisfied, remand for further proceedings would still be appropriate if an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled. *Garrison*, 759 F.3d at 1021. On the other hand, it would be an abuse of discretion for a district court to remand a case for further proceedings where the credit-as-true rule is satisfied and the record affords no reason to believe that the claimant is not, in fact, disabled. *Id*.

In this case, the court finds that all parts of the three-part test are met. As set forth above, the ALJ erred in rejecting the opinions of treating physician Dr. Major, who opined that Plaintiff would likely miss more than three workdays per month. The ALJ found that Plaintiff could do simple routine work that involves no contact with the public and no more than occasional contact with supervisors and coworkers. The vocational expert who testified at the June 5, 2017 hearing stated that there was no work for a person with those limitations who would miss three or more days of work per month. *AR* (dkt. 15) at 540. Thus, if Dr. Major's opinion were credited as true,

the ALJ would be required to find Plaintiff disabled on remand. *See Lester v.* Chater, 81 F.3d 821, 834 (9th Cir. 1996) ("Where the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, we credit that opinion 'as a matter of law.'" (quoting *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir.1989))). Further administrative proceedings would serve no useful purpose. Finally, the court finds that an evaluation of the records as a whole reveals no reason to believe that Plaintiff is not disabled. Accordingly, the court will therefore grant Plaintiff's request to remand this case for calculation and payment of benefits under the credit-as-true rule.

## **CONCLUSION**

Based on the foregoing, IT IS HEREBY ORDERED as follows:

1) Plaintiff's motion for summary judgment is GRANTED;
2) Defendant's motion for summary judgment is DENIED;
3) This case is remanded with instructions for the ALJ to calculate and award benefits;
4) A separate judgment will issue.

**IT IS SO ORDERED.**

Dated: March 11, 2019

ROBERT M. ILLMAN
United States Magistrate Judge